# AFFIDAVIT OF PROBABLE CAUSE

I, Connor Donahue, being first duly sworn, hereby depose and state as follows:

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property – an electronic device – that is currently in law enforcement possession, and the extraction from that property of electronically stored information described in **Attachment B**.

2. I am a United States Postal Inspector, assigned to the Harrisburg Domicile, Philadelphia Division of the United States Postal Inspection Service ("USPIS"), and have been so employed since June 2023. As part of my duties as a U.S. Postal Inspector, I investigate violations of criminal statutes relating to the United States Postal Service ("USPS") and its employees.

3. Before joining USPIS, I served as a Special Agent with Homeland Security Investigations from 2020-2023.

4. I have completed two federal law enforcement academies: (1) The Federal Law Enforcement Training Center's Criminal Investigator Training Program in Glynco, Georgia; and (2) Homeland Security Investigation's Special Agent Training in Glynco, Georgia.

5. I received training in CITP and HSISAT, which covered cell phones, and I have experience executing search warrants on cell phones.

6. I received a Bachelor of Arts degree in Political Science from the University of California, Los Angeles.

7. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

8. The property to be searched, that is the "Subject Device," as also set forth in **Attachment A**, is an Apple iPhone "PRODUCT RED" with unknown serial number (the "Subject Device"), which is currently located at the Office Evidence Drawer, 1425 Crooked Hill Road, Suite 228, Harrisburg, PA 17106.

9. The applied-for warrant would authorize the forensic examination of the Subject Device for the purpose of identifying electronically stored data, described in Attachment B.

## PROBABLE CAUSE

10. On or about **November 3, 2023**, at approximately 1440 hours, a female suspect ("Suspect 1") entered the United States Post Office located at 9 N Ronks Rd, Ronks, Lancaster County, PA 17572, presented a United States Treasury Check for $3,312.00, and presented a synthetic New York driver license that had information matching the information on the check. The check was negotiated into four USPS money orders.

11. On the same date, at approximately 1510 hours, Suspect 1 entered the United States Post Office located at 1638 Lampeter Rd, Lampeter, Lancaster County, PA 17537, presented a United States Treasury Check for $4,730.00 that was converted into five USPS money orders.

12. On the same date, at approximately 1530 hours, Suspect 1 entered the United States Post Office located at 6 Violet Ave, Willow Street, Lancaster County, PA 17584, and was unable to negotiate a U.S. Treasury Check due to technical issues at the Post Office.

13. On or about **November 17, 2023**, at approximately 1225 hours, Suspect 1 entered the United States Post Office located at 452 Dewart St, Riverside, Northumberland County, PA 17868, presented a United States Treasury Check for $1,142.00, and presented a synthetic New York driver license with identifying information that matched information on the check. The check, in turn, was negotiated into two USPS money orders.

14. On the same date, at approximately 1253 hours, Suspect 1 entered the United States Post Office located at 410 Mill St, Danville, Montour County, PA 17821, presented a United States Treasury Check for $1,146.72, and presented a New York identification Card that matched the name and address on the presented check. The treasury check, in turn, was negotiated into two USPS money orders.

15. On the same date, at approximately 1315 hours, a male suspect ("Suspect 2") entered the same Riverside, PA post office and attempted to present a United States Treasury Check for negotiation into a USPS money order. The clerk, however, denied the transaction, at which point Suspect 2 ran out of the Post Office.

16. On the same date, at approximately 1416 hours, Suspect 1 entered the United States Post Office located at 121 N 3rd St, Catawissa, Columbia County, PA 17820, presented a United States Treasury Check for $3,971.88, and presented a New York identification card. The check was negotiated into four USPS money orders.

17. On the same date at approximately 1515 hours, Suspect 1 entered the United States Post Office located at 230 Market St, Bloomsburg, Columbia County, PA 17815, presented a United States Treasury Check for $3,981.00, and presented a New York identification card. The check was negotiated into four USPS money orders.

18. On the same date, at approximately 1540 hours, Suspect 2 entered the same Catawissa, PA post office, presented a United States Treasury Check for $1,571.00, and presented a New York Identification Card. The check was negotiated into two USPS money orders.

19. United States Postal Inspectors responded to the above-referenced post offices. Inspectors interviewed all Clerks who interacted with the Suspects.

20. A Clerk from the Riverside post office identified the suspects' vehicle as a gray in color Nissan Sentra bearing Georgia License Plate CWW4841. This same vehicle was identified by and captured via cell phone photo by the Clerk at the Catawissa Post Office later that same date.

21. Video surveillance footage also was available from the Catawissa Post Office that captured both Suspects when they individually entered the Post Office.

22. On or about **November 28, 2023**, at approximately 1405 hours, Suspect 2 entered the United States Post Office located at 1 Sullivan Ave, Eagles Mere, Sullivan County, PA 17731 and attempted to negotiate a U.S. Treasury Check in the amount of $4484.43 that was made out to a David Geffen of 111 Steuben St, APT 4A, Brooklyn, NY 11205. Suspect 2 presented a fake New York driver license bearing the same name and address as the U.S. Treasury Check, but with Suspect 2's photo and the remainder of the information being fake.

23. The Post Office was unable to process the transaction and directed Suspect 2 to the Picture Rocks Post Office.

24. On the same date at approximately 1425 hours, Suspect 2 entered the United States Post Office located at 21 Laurel Run Rd, Picture Rocks, Lycoming County, PA 17737, with the same United States Treasury Check and New York driver license described above, and attempted to negotiate the Treasury Check into a Postal Money Order.

25. The Picture Rocks Post Office also was unable to complete the transaction and directed Suspect 2 to the Hughesville Post Office.

26. On the same date at approximately 1445 hours, Suspect 2 entered the United States Post Office located at 44 N Main St, Hughesville, Lycoming County, PA 17737, with the same U.S. Treasury Check and New York driver license described above, attempting to negotiate the check into a Postal money order.

27. The Hughesville Post Office declined to complete the transaction. Suspect 2 left.

28. On the same date at approximately 1554 hours, Suspect 2 entered the United States Post Office located at 316 Main St, Watsontown, PA 17777, with the same U.S. Treasury Check and New York driver license described above, attempting to negotiate the check into a Postal money order.

29. The Clerk took the New York driver license and check and went to the Watsontown Police Station (adjacent to the post office) to advise of suspected fraud.

30. Watsontown Officers responded to the Watsontown Post Office, detained Suspect 2 (identified as Jeremiah Dent), and took him to the Watsontown Police Station.

31. Further investigation by a Milton Police Officer located the suspects' vehicle, i.e., the Subject Vehicle, in the same block as the Watsontown Post Office.

32. Two females, Suspect 1 (identified as Leanna Baines) and Tania White, were in the Subject Vehicle. They were identified and detained, and the Subject Vehicle was impounded.

33. White chose to speak with the undersigned after receiving *Miranda* warnings.

34. White told the affiant the following, in relevant part:

> a. On or about Monday, November 27, 2023, she met Dent through Baines for the first time. Dent told White about an opportunity to make money. White subsequently allowed Dent to take her photograph with his phone to create a synthetic identification card.

    b. On or about Tuesday, November 28, 2023, Dent and Baines picked White up from her residence at approximately 0824 hours, and the three suspects drove to Pennsylvania. According to White, Dent possessed numerous identification cards and checks. One of the identification cards had White's photo on it but in a different name. White further told the affiant that those documents were in the Subject Vehicle.

35. On **November 30, 2023,** the affiant executed a search warrant on the referenced vehicle that resulted in the recovery of seven United States postal money order customer's receipts and seizure of a fake New York State driver license from Baines' wallet.

36. On the same date, the affiant took custody of six fake New York State driver licenses, which were recovered from Dent during a search upon arrival to the Northumberland County Jail. Three of the driver licenses contained Dent's photo with different names and addresses. Two of the drive licenses contained White's photo with different names and addresses. And one of the driver licenses contained the same photo of Baines that was on the fake driver license used by Baines on November 3, 2023, and on the fake driver license recovered from Baines' wallet within the subjects' vehicle. Moreover, all three driver licenses with Baines' photo had different names and addresses.

9

37. The Subject Device is currently in the lawful possession of USPIS. It came into USPIS' possession incident to Jeremiah Dent's arrest by Watsontown Police. Therefore, while the Watsontown Police might already have all necessary authority to examine the Subject Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

38. The Subject Device is currently in storage at Office Evidence Drawer, 1425 Crooked Hill Road, Suite 228, Harrisburg, PA 17106. In my training and experience, I know that the Subject Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of USPIS.

## TECHNICAL TERMS

39. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. **Wireless telephone**: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b. **GPS Device**: The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

    c. **Internet**: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

40. Based on my training, experience, and research, I know that the Subject Device has capabilities that allow it to serve as a wireless telephone, with GPS capabilities and internet access. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

41.  Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed on the internet are typically stored for some period of time on the device.

42.  <u>Forensic Evidence</u>.  As further described in Attachment B, this application seeks permission to locate electronically stored information that might serve as direct evidence of the crimes described on the warrant, as well as forensic evidence that establishes how the Subject Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Subject Device because:

   a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.    The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

43.  <u>Nature of Examination</u>. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

44. <u>Manner of Execution</u>. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

45. I make this affidavit, in part, based on personal knowledge derived from my participation in this investigation and, in part, based upon information from the following sources: oral and written reports prepared by me or other law enforcement officers, surveillance video, License Plate Readers, and witness and suspect interviews.

46. Except where otherwise noted, the information herein was provided to me directly or indirectly by witnesses and other law enforcement officers. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have read and reviewed. Such statements are among many

statements made by others and are stated in substance, unless otherwise indicated.

47. I submit that this affidavit supports probable cause for a search warrant of the Subject Device to seek the items described in Attachment B.

## ATTACHMENT A

The property to be searched is an Apple iPhone "PRODUCT RED", unknown serial number, hereinafter the "Subject Device." The Subject Device is currently located at Office Evidence Drawer, 1425 Crooked Hill Road, Suite 228, Harrisburg, PA. This warrant authorizes the forensic examination of the Subject Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.　All records on the Subject Device described in Attachment A that relate to violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. §§ 495, 510 (forging endorsements on Treasury checks or bonds or securities of the United States), 18 U.S.C. § 1028 (fraud and related activity in connection with identification documents, authentication features, and information), 18 U.S.C. § 1341 (frauds and swindles), 18 U.S.C. § 2315 (sale or receipt of stolen goods, securities, moneys, or fraudulent State tax stamps), and related offenses, and involve Jeremiah Dent, including: photographs and videos; text messages; social-media messages; phonebooks; internet-browsing history and records of internet activity (e.g., bookmarked or favorite web pages and search terms); call logs; GPS data; scheduling and travel information; bank records, account information, and other financial records; lists of victims.

2.　Evidence of user attribution showing who used or owned the Subject Device at the time the things described in the warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and internet browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.